## GENERAL ELECTRIC CREDIT CORPORATION

### Plaintiff

### vs.

## MARY TSO VANDEVER

### Defendant

Decided on August 1, 1978

Thomas J. Hynes, Hynes, Eastburn and Hale, Farmington, New Mexico, for Plaintiff

Paul E. Frye, D.N.A., Crownpoint, New Mexico, for Defendant

NESWOOD, District Judge

On September 29, 1973, the defendant Mary Tso Vandever purchased a mobile home from Plaza Mobile Homes in Farmington, New Mexico with a downpayment of $2,000.00. The plaintiff was to make one hundred and twenty (120) payments of $153.06. The terms of the installment contract also included property insurance at a charge additional to the purchase price. A copy of the insurance policy that resulted from the contract was never sent to the defendant.

In accordance with the terms of the contract, the entire contract was assigned to the plaintiff, General Electric Credit Corporation (GECC).

The defendant continued to make payments through Oct-

ober, 1976, at which time she decided that she no longer desired to own the mobile home and that she wanted it transfered to a Gladys Antone. The arrangements agreed upon by the defendant and Miss Antone are unclear, except that Miss Antone was to assume the monthly payments.

Beginning in November, 1976, Gladys Antone made payments to GECC which were accepted by the plaintiff. Subsequently, Miss Antone was informed by a representative of GECC that she should apply for a transfer of credit and that there would be no problem in effectuating that transfer of credit.

On April 14, 1977, Miss Antone received a notice from the plaintiff entitled "Statement of Credit Denial, Termination Or Change". Neither of the two boxes under "Description of Adverse Action Taken" were checked. The boxes under "Principal Reason(s) For Adverse Action Concerning Credit" were also unchecked.

Because the notice contained no statement that her credit had been disapproved, and because representatives of GECC had assured her there would be no problem with the transfer of credit, Miss Antone believed there was no problem with the transfer and continued making payments.

In July, 1977, the plaintiff, without stating a reason, refused to accept any further payments from Miss Antone.

On October 3, 1977, the plaintiff commenced this action asking for repossession of the mobile home. The summons was not served until December 20, 1977. Answers and counterclaims were filed on February 6, 1978.

During the pendancy of this action, on January 26, 1978, it appears that the plaintiff or its representatives attempted to repossess the mobile home in question. This repossession was prevented by the Navajo Police.

On June 26, 1978, the defendant filed a motion for judgment on the counterclaims alleging that the plaintiff had failed to answer the counterclaims in a timely manner.

A hearing was held on July 18, 1978 in the Crownpoint District Court at which both parties presented evidence and witnesses.

The first matter which must be disposed of by this Court is the Motion for Judgment On the Counterclaims, which is really in the nature of a motion for default judgment. Rule 4 of the Navajo Rules of Civil Procedure requires that an answer to the complaint be filed within thirty (30) days. The rule contains no requirement that an answer be filed to any counterclaims and no requirement that any such answer contain the party's signature.

While it is probably preferrable that answers be filed to counterclaims, this Court cannot enforce such a rule unless it is in

the Rules of Civil Procedure. Therefore, the Court denied this Motion verbally and will not reach any of the other issues raised surrounding this motion.

It is obvious to the Court that payments on the mobile home were not current as of the date of the filing of this action and no effort has been made to make them so. The last time this account was current appears to be August, 1977. The question which this Court must address is whether the actions of the plaintiff contributed to the causes for the overdue payments. The Court must also ascertain whether repossession is in order.

The actions of GECC in this matter are difficult to understand. The notice denying the transfer of credit is unclear and GECC continued to accept Gladys Antone's payments in spite of the fact that they claimed to have denied the transfer. It seems to this Court that the defendant was entitled to believe for a period of time that the transfer had taken place.

While the defendant may not have taken all necessary steps to ensure that the proper transfer had indeed taken place, the seller must have been aware that Mrs. Vandever was a woman who understood little English and probably would not have understood the requirements of transfer. The fact that GECC was an assignee of the contract does not alter the fact that certain allowances should have been made for this situation. GECC merely stands in place of the seller and is deemed

to have his full knowledge.

To allow repossession of the mobile home would be to allow GECC to profit from the confusion it created. On the other hand, this Court does not feel the defendant should be allowed to receive something for nothing. At the time she purchased the mobile home, the defendant fully expected to make all the payments. This Court sees no reason that she should not expect to honor that committment now.

Since GECC refused the transfer, this Court will not apply Miss Antone's payments to the amount due. Therefore, the defendant is liable to GECC for the monthly payments due from November, 1976 until the present. As Miss Antone was not a party to this suit, this Court will decline to order GECC to refund her money she paid. If Miss Antone desires a refund, she may sue GECC.

Accordingly, the Court will not order repossession of the mobile home but will require that payments be brought up to date. The backpayments due through July, 1978 total $3,214.26.

The defendant has presented this Court with several counterclaims, three of which can be disposed of immediately.

The first of these counterclaims is that the transaction violated the provisions of 15 U.S.C. 1601 et seq. and specifically the regulations thereunder, 12 CFR 226.4 and 12 CFR 226.402.

7 NTC 104 mandates that the courts of the Navajo Nation apply federal laws. Therefore, it is apparent that this Court does have jurisdiction over the counterclaims.

However, as the Navajo Court of Appeals stated in Smoak Chevrolet vs. Barton:

> "The cause of action... is created solely by federal law and finds no counterpart in any law of the Navajo Nation. Therefore, the Navajo statute of limitations is inapplicable."

Thus, the counterclaim in this action is barred by the one (1) year statue of limitations contained in 15 U.S.C. 1640(e). In those instances where a court has allowed a longer statute of limitations, there was a state law permitting a setoff after the expiration of the federal limit. See Reliable Credit Services vs. Bernard, 339 So.2d 952 (1976, La. App.); Stephens vs. Household Finance Corp., 566 P.2d 1163 (1977, Okla.).

The next counterclaim that can be disposed of is that concerning the alleged repossession attempt. If the defendant had desired to pursue this counterclaim, she should have proceeded under 7 NTC 309. The defendant failed to invoke this section in her counterclaim. Furthermore, this Court would require more proof in this claim were it pursued.

This should not be interpreted by GECC to mean that their action is being condoned. Once a suit is filed in this Court, the entire

matter is to remain there. Any attempt to repossess property not in compliance with the Navajo law and any attempt to repossess property already the subject of a court action will be dealt with harshly. It may be that the courts of the state of New Mexico are willing to tolerate such actions, but this Court will not.

Defendant's counterclaim that GECC's actions constitute a misrepresentation of a material fact are very similar to the counterclaim this Court will deal with below and is therefore not taken up separately.

The defendant's counterclaim that the seller failed to forward a copy of the insurance policy to her as mandated by N.M. S.A. § 50-15-7 is well taken. N.M.S.A. § 50-15-11(B) provides that no finance charge can be collected if § 50-15-7 is violated.

GECC seeks to avoid the provisions of the New Mexico law by claiming it was the seller's responsibility and not theirs and they are therefore not liable.

While it is true that an assignor may not shift his liability to the assignee, this does not mean the assignor must personally perform all the duties and obligations of the contract. He may delegate the performance of his obligations to another where the other is capable of performing. In this instance, the Court must assume that the assignor (the seller) meant to delegate the performance of the N.M.S.A.

§ 50-15-7 because the contract states that when it is fully completed and signed and approved by GECC, it will be assigned to GECC.

To reach any other conclusion would mean that the penalty provision of N.M.S.A. § 50-15-11 would have little impact. An assignee such as GECC could avoid compliance with the law by claiming it was the seller's responsibility. A buyer's only recourse would be to sue the seller who no longer holds the contract to recover finance charges. This Court declines to impose this burden on the defendant.

Because the insurance expired on October 26, 1976 and because this Court reads N.M.S.A. § 50-15-11 to mean that finance charges during the insurance period cannot be collected, only those payments between November 21, 1973 and October 26, 1976 are affected.

GECC is ordered to compute and refund to the defendant that portion of those payments made between November 21, 1973 and October 26, 1976 which are interest within thirty (30) days of the date of this opinion.

A final counterclaim that is made by the defendant is that GECC damaged her by using ambiguity as to a material fact or by failing to state a material fact.

In a previous portion of this opinion, the Court stated that it was unwilling to allow the defendant to reap profit due to the con-

fusing situation. The Court is equally unwilling to allow GECC to profit from the confusion it created by accepting Miss Antone's money and leading the persons involved to believe everything was proper.

The only damages that have resulted to the defendant are the fact that she now owes a lump sum of money which she believed Miss Antone would or had paid and the harassment of this law suit. The Court believes that the value of the damages is the total amount of the payments due from November, 1976 through July, 1978, the period of time in which this confusion existed and in which the defendant could reasonably expected she would not be liable for. The Court does not believe that the defendant expected to receive the mobile home without making any further payments.

Therefore, GECC is liable to the defendant on this counter-claim for damages in the amount of $3,214.26, which is the total of the monthly payments from November, 1976 through July, 1978.

The final order of this Court is then as follows:

1. Mary Tso Vandever is liable to General Electric Credit Corporation in the amount of $3,214.26 for backpayments on her mobile home.

2. General Electric Credit Corporation is liable to Mary Tso Vandever in the amount of $3,214.26 for damages caused by the

confusion created by GECC. Payments are deemed complete through July, 1978 and the next payment due is on August 21, 1978.

3.    General Electric Credit Corporation is to compute which portion of the monthly payments from November, 1973 through October 26, 1976 was interest and deposit it with this Court within thirty (30) days of the date of this opinion. The Court will then allow the defendant to examine the calculations and the amount and either accept the refund or show the Court her own calculations within ten (10) days of the date of deposit. In the event of a dispute, the Court will then examine both parties' calculations and make an award without further hearing.

4.    Mary Tso Vandever will begin making monthly payments on August 21, 1978 in the amount of $153.06 until the mobile home is paid for.